[No. 649-2.    Division Two.    November 8, 1972.]

THE STATE OF WASHINGTON, *Appellant,* v. CARL O. LUNDELL, *Respondent.*

*John C. Merkel, Prosecuting Attorney,* for appellant.

*Quinby R. Bingham* (of *Mann, Copeland, King, Anderson, Bingham & Scraggin*), for respondent.

ARMSTRONG, J.—The sole question in this appeal is whether placing one or two strands of barbed wire across a private roadway is prohibited by RCW 9.41.180, entitled by the legislature "Setting Spring Gun", where the body of the act refers to setting a "so-called trap, spring pistol, rifle or other deadly weapon." The trial court held that it was not and dismissed the action because the information did not charge a crime under that statute. We agree.

The information charged:

He, the said CARL O. LUNDELL, in the County of Kitsap, State of Washington, on or about the 9th day of May,

1971, wilfully, unlawfully and feloniously did set a so-called trap or other deadly weapon, to-wit: one or more strands of barbed wire placed across a path or roadway in such a manner as to constitute a so-called trap or other deadly weapon as a result of which one GAY BUCK, a human being, was injured, to-wit: by multiple lacerations about his face and throat; contrary to RCW 9.41.180.

Prior to argument on defendant's motion to dismiss, it was agreed that the barbed wire was across a road which was of normal width and it was located on the real property of defendant.

RCW 9.41.180 provides:

Setting Spring Gun. Every person who shall set a so-called trap, spring pistol, rifle, or other deadly weapon, shall be punished as follows:

(1) If no injury result therefrom to any human being, by imprisonment in the county jail for not more than one year or by a fine of not more than one thousand dollars, or by both.

(2) If injuries not fatal result therefrom to any human being, by imprisonment in the state penitentiary for not more than twenty years.

(3) If the death of a human being results therefrom, by imprisonment in the state penitentiary for not more than twenty years.

This statute was enacted as section 266, chapter 249, Laws of 1909, as a part of a comprehensive criminal code. The original enactment and the statute are identical in phraseology. The only differences between the original enactment and the codified statute are the placement and italicizing of the section headnote and the presence of a marginal note in the original act. We illustrate the differing portions.

Sec. 266. *Setting Spring Gun.*
Every person who shall set a so-called trap, spring pistol, rifle, or other deadly weapon, shall be punished as follows:

Setting spring gun.

(Penalty provisions deleted.)

In Merriam-Webster's Third International Dictionary

(1969) a spring gun is defined as a set gun. A set gun is described as "a firearm set as a trap to fire on the intruder or on game when a wire attached to its trigger is disturbed."

Although the statute in question has never been judicially interpreted in this state, two early Washington cases demonstrate the type of trap commonly referred to as a spring gun and the need for a legislative clarification of the law relating to the use of spring guns. *See State v. Barr,* 11 Wash. 481, 39 P. 1080 (1895); and *State v. Marfaudille,* 48 Wash. 118, 92 P. 939 (1907). In the *Marfaudille* case, decided 13 months before the 1909 legislature convened, the Supreme Court reversed a conviction of murder in the second degree. The defendant had rigged a spring gun within a trunk in a room he rented. When the proprietress of the lodging house opened the trunk the gun was discharged and she was killed instantly.

The state argues that the allegation that the defendant "wilfully, unlawfully and feloniously did set a so-called trap or other deadly weapon, to-wit: one or more strands of barbed wire placed across a path or private driveway in such a manner as to constitute a so-called trap or other deadly weapon" brings the charge within the ambit of the statute. We cannot agree because the statute does not convey a clear and unambiguous definition of a "so-called trap." The statute, therefore, is subject to the rules of statutory construction.

If a penal statute is ambiguous, it must be interpreted strictly against the state and liberally in favor of the accused. Strict construction requires that doubts in construction of a penal statute must be resolved against including borderline conduct. *Seattle v. Green,* 51 Wn.2d 871, 322 P.2d 842 (1958); *State v. Boyer,* 4 Wn. App. 73, 480 P.2d 257 (1971).

We are aided by another rule of statutory construction. If a statute is ambiguous, section headings and marginal notes which are enacted as a part of the act may be

used to assist in determining legislative intent.[1] Under such circumstances section headings and marginal notes must be given as much force as the title of the entire act. In determining legislative intent the title of the act is always a subject for consideration because the subject or object expressed in the title fixes a limit to the scope of the act. Of course where the meaning of the act is clear and unambiguous, courts will not consider section headings and marginal notes. *State ex rel. Swan v. Taylor,* 21 Wash. 672, 59 P. 489 (1899); *State v. Crothers,* 118 Wash. 226, 203 P. 74 (1922); *State v. Seger,* 1 Wn. App. 516, 463 P.2d 185 (1969); 1 and 2 J. Sutherland, *Statutory Construction* §§ 1709 and 4903 (F. Horack 3d ed. 1943).

▮▮ We turn now to the provisions of the statute which provide: "Every person who shall *set* a *so-called trap,* spring pistol, rifle or other deadly weapon . . ." (Italics ours.) We find that the italicized portions of this statute create an ambiguity. It is not clear what setting a so-called trap constitutes. It could be argued that the legislature had in mind a type of trap which snares the intruder when something triggers the pistol, rifle or other deadly weapon.

To resolve the ambiguity and determine the legislative intent we may consider the section headnote and the marginal note. We conclude that the legislature's use of the headnote and the marginal note indicates it intended the statute to refer only to the type of trap which is triggered in the manner of a spring gun—a trap which activates a triggering mechanism of a pistol, rifle or other dangerous weapon. This statute therefore does not prohibit the conduct alleged in the information.

We do not question the state's contention that there is a need for a statute which will protect against the harm

[1] Section headings which appear in RCW have three derivations: (1) they are placed there by the code reviser, (2) they are placed there by the legislature but there is a specific provision in the statute that section headings do not become a part of the act, or (3) they are placed in the original act by the legislature without any limiting provisions. It is only in the latter instance that section headings become an integral part of the law and are useful in statutory interpretation.

which the state contends occurred in this case. The rule of strict construction of penal statutes, however, is a limitation on the powers of judges to prevent them from imposing a sentence unless the legislature has clearly stated that they may. We find no such clear statement in this case.

Judgment affirmed.

PETRIE, C.J., and PEARSON, J., concur.

Petition for rehearing denied December 15, 1972.